IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

ALAN H. BUGG,

    Plaintiff,

v.                                                   Civil No. 01-1338 WJ/RHS

QUAY COUNTY,

    Defendant.

**MEMORANDUM OPINION AND ORDER GRANTING IN PART
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
AND DECLINING TO EXERCISE SUPPLEMENTAL JURISDICTION
OVER PLAINTIFF'S REMAINING STATE LAW CLAIMS**

THIS MATTER comes before the Court pursuant to Defendant's Motion for Summary Judgment [Docket No. 43]. Having reviewed the submissions of the parties and being fully advised on the law, I find the motion is well taken in part and will be granted in part for the reasons stated herein. Further, the Court will decline to exercise supplemental jurisdiction over Plaintiff's state law claims and will dismiss these without prejudice.

**BACKGROUND**

Plaintiff was diagnosed with diabetes in either 1976 or 1977.[1] Plaintiff's doctors advised him that he needed to monitor his diet and insulin as a way of controlling his diabetes. Doctors also advised him that stress was bad for his diabetes.

Defendant first hired Plaintiff as a Dispatcher/Jailer in approximately 1979. Plaintiff was able to perform all of the job functions associated with the Dispatcher/Jailer position. Plaintiff left

---

[1] Defendant does not dispute that Plaintiff has diabetes and thus has a physical impairment for purposes of the ADA.

his job with Defendant at some point to work as a security officer with Correction Corporation of America (CCA).  Plaintiff worked with CCA for approximately a year and a half.  Plaintiff was able to perform all of the functions of his job with CCA.

In 1989, Plaintiff left the profession of correctional officer and worked for his father as a farm and ranch hand.  He stayed in this job for approximately a year and a half and was able to perform all the functions of that job.

Plaintiff was hired by Defendant as a Dispatcher/Detention Officer for the Quay County Detention Center on December 20, 1990.  At all times material to this case, Plaintiff's immediate supervisor was Jessie Luera.  During the summer of 1993, Plaintiff was required to work twelve hour shifts and take rotating shifts from day to night every 90 days.  Plaintiff opposed this schedule change due to his diabetes.  Plaintiff was concerned that the shifts were hard on his diabetes.  Plaintiff testified that the job often left insufficient time to eat meals, and that he was skipping meals once or twice a week.  He believes his supervisors were aware he was skipping meals because they often ate together as a group and would get called away from meals together. Plaintiff expressed his concerns about his shifts to his supervisor and others over a period of time. Plaintiff also contacted the Governor's Committee on Concerns for the Handicapped and requested input from his doctors on the subject of his shifts.  On July 6, 1993, the Governor's Committee on Concerns for the Handicapped sent a letter to then Quay County Manager Sandra Garley informing her that Plaintiff is a "person with a disability under ADA.  As such, he should be given the opportunity to work out a 'reasonable accommodation' with his employer.'"

In 1994, Defendant offered to transfer Plaintiff to a position with the Road Department. Plaintiff turned down the offer because his endocrinologist saw some improvement in Plaintiff's

2

health.  Plaintiff also turned down the job because he would have to take a cut in pay and there was a question whether his tenure at the Detention Center would count as time in service with the Road Department.

Plaintiff also complained about the quality of food being served at the Detention Center.[2] Plaintiff requested meals that would be better suited for his diabetic condition.  The food provided at the Detention Center is provided for the inmates, and Quay County formal policies do not entitle employees to eat meals provided to the inmates.  Plaintiff's request did not result in any changes to the food being prepared and served at the Detention Center.  Plaintiff was told he was welcome to bring his own food to meet his dietary needs.

In 1995, Plaintiff applied for and received a promotion to shift supervisor.  While Plaintiff was a detention supervisor, Defendant initiated termination proceedings against him on two separate occasions.  In 1999, Defendant suspended Plaintiff and subsequently terminated his employment on October 20, 1999.  According to Defendant, the termination was the result of two reprimands and two written warnings.  The first reprimand was dated March 19, 1999 and concerned an incident that occurred on March 17, 1999.  The second reprimand was dated October 8, 1999 and concerned incidents that occurred on August 24, 1999, September 29, 1999 and October 7, 1999. The first written warning was dated October 8, 1999 and concerned the incident that occurred in August 1999.  The second written warning was dated October 9, 1999 and concerned the incident that occurred October 7, 1999.  Plaintiff appealed his termination.

---

[2]The food at the Detention Center is provided and prepared by an outside contractor. Defendant urges that this eliminates any claim for failure to accommodate based on the food quality because the food service contractor owed no duty to Plaintiff to accommodate any alleged disability.  The Court suspects this argument is flawed but does not rule on the issue.

The termination was reversed by the County Manager based on procedural inadequacies. Plaintiff was reinstated on November 12, 1999.

Plaintiff's employment was again terminated on June 13, 2000. Defendant states the termination was based on three written warnings in addition to Plaintiff's previous disciplinary record. The first written warning was dated February 2, 2000 and concerned conduct that occurred that same date. The second written warning was dated February 3, 2000 and concerned conduct that occurred February 2, 2000. The third written warning was dated April 28, 2000 and concerned an incident that occurred that same date.

Plaintiff was offered and accepted the opportunity for a pre-termination hearing. The hearing was held on June 13, 2000. Defendant upheld the decision to terminate Plaintiff and made the termination effective immediately. Plaintiff requested a post-termination hearing. On August 29, 2000, a post-termination hearing was held before an independent arbitrator. The arbitrator upheld Plaintiff's termination.

Following Plaintiff's termination from the Quay County Detention Center, Plaintiff worked at Holiday Inn handling maintenance and for the City of Tucumcari doing maintenance on the sewer plant. Plaintiff was able to perform all the required tasks for these jobs.

Plaintiff filed a Charge of Discrimination (Charge) with the New Mexico Human Rights Division and EEOC on February 21, 2001. The Charge alleges discrimination on the basis of disability. The specific acts of discrimination alleged include a failure to accommodate based on the shift schedule, a failure to accommodate based on the employer's alleged failure to meet Plaintiff's dietary requirements, and the termination on June 13, 2000. Plaintiff received a Notice of Right to Sue on August 29, 2001.

Plaintiff filed his Complaint in this Court on November 27, 2001. The Complaint alleges the jurisdiction of this Court pursuant to 28 U.S.C. § 1343 and Title VII, 42 U.S.C. § 2000e-5(f)(3) for a claim under the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12101 through 122213. Plaintiff's factual allegations assert that Plaintiff was discriminated against on the basis of a disability. Plaintiff's claims allege a breach of employment contract in Count I, a breach of the implied covenant of good faith and fair dealing in Count II, unlawful discrimination in violation of Title I of the ADA in Count III, and wrongful termination in Count IV.

Defendant filed its Motion for Summary Judgment arguing that Plaintiff is not a qualified individual with a disability covered by the ADA. Defendant also urges that Plaintiff cannot show that the Defendant's reasons for his termination are a pretext for discrimination.[3] Finally, Defendant asserts that Plaintiff's claims for breach of contract and breach of the implied covenant of good faith and fair dealing are barred by collateral estoppel.

**LEGAL STANDARD**

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The burden of showing an absence of a genuine issue of material fact falls upon the moving party. See Adler v Wal-Mart Store, Inc., 144 F.3d 664, 670 (10th Cir.

---

[3]With regard to Plaintiff's claims for failure to accommodate, Defendant makes contentions that Plaintiff did not timely file a charge of discrimination alleging these claims. However, Defendant does not squarely argue that Plaintiff failed to exhaust his administrative remedies with regard to these claims. The Court does not reach the issue of exhaustion because it was not squarely raised and because the Court finds that Plaintiff is not a qualified individual with a disability under the ADA.

5

1998). However, when the moving party does not bear the ultimate burden of persuasion at trial, it may satisfy its burden at the summary judgment stage by pointing out to the Court that there is an absence of evidence to support the nonmoving party's case. Celotex Corp. v Catrett, 477 U.S. 317, 322-23 (1986); Adler, 144 F.3d at 671. The nonmoving party must then go beyond the pleadings to set forth specific facts showing that there is a genuine issue for trial sufficient to support a verdict for the nonmovant. Anderson v Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986). All reasonable factual inferences must be drawn in favor of the nonmoving party. Seamons v Snow, 206 F.3d 1021, 1026 (10th Cir. 2000); Curtis v Oklahoma City Public Sch. Bd. of Ed., 147 F.3d 1200, 1214 (10th Cir. 1998). However, the nonmovant must establish, at a minimum, an inference of the presence of each element essential to the case. Bausman v Interstate Brands Corp., 252 F.3d 1111 (10th cir. 2001).

**DISCUSSION**

I. IS PLAINTIFF A QUALIFIED INDIVIDUAL WITH A DISABILITY COVERED BY THE ADA?

When considering a claim brought under the ADA, the McDonnell-Douglas burden shifting framework governs the analysis. See 42 U.S.C. § 12112(a); Doebele v. Sprint/United Mgmt. Co., 342 F.3d 1117, 1135 (10th Cir. 2003); Williams v. Widnall, 79 F.3d 1003, 1005 & n.3 (19th Cir. 1996). Under that analysis, a plaintiff carries the initial burden of making a prima facie showing of discrimination based on disability. Davidson v. America Online, Inc., 337 F.3d 1179, 1189 (10th Cir.2003). If the plaintiff makes this prima facie showing, the burden shifts to the defendant to articulate a legitimate nondiscriminatory reason for its employment decision. Id.

6

If the defendant meets this burden, the burden shifts back to plaintiff to show that the defendant's reason for the adverse employment action is pretextual. Id.

To make a prima facie showing of discrimination under the ADA, Plaintiff must show that (1) he was a disabled person within the meaning of the ADA; (2) he was able to perform the essential functions of his job with or without reasonable accommodation; and (3) that Defendant discriminated against him because of his disability. Albert v. Smith's Food & Drug Ctr., Inc., 356 F.3d 1242, 1249-50 (10th Cir. 2004). To show that he is a disabled person under the first prong, Plaintiff must show that he has a physical or mental impairment that substantially limits one or more major life activities. Id. at 1250. An ADA plaintiff seeking to establish a disability "must articulate with precision the impairment alleged and the major life activity affected by that impairment, and the court is to analyze only those activities identified by the plaintiff." Doebele, 342 F.3d at 1129 (internal citations omitted). Parties agree that Plaintiff's diabetes qualifies as a physical impairment. Plaintiff articulates that the major life activity affected by this impairment is working. Working is a major life activity under the ADA. Davoll v. Webb, 194 F.3d 1116, 1134 (10th Cir. 1999). Plaintiff has the burden of showing that his diabetes substantially limits his working.

Substantially limits means that a plaintiff is (1) unable to perform a major life activity that the average person can perform; or (2) significantly restricted in performing a particular major life activity as compared to the average person performing that same major life activity. Albert, 356 F.3d at 1250 (citing 29 C.F.R. § 1630.2(j)). In determining whether a plaintiff's impairment substantially limits a major life activity, a court should consider (1) the nature and severity of the impairment; (2) the duration or expected duration of the impairment; and (3) The permanent or

long term impact, or the expected permanent or long term impact of or resulting from the impairment. Id. To be substantially limited in a major life activity, a person's impairment must prevent or severely restrict that person "from doing activities that are of central importance to most people's daily lives." McGeshick v. Principi, 357 F.3d 1146, 1150 (10th Cir. 2004) (citing Toyota Motor Mfg. Ky, Inc. v. Williams, 534 U.S. 184, 198, 200-01 (2002)). To evaluate whether a plaintiff's impairment substantially limits the major life activity of working, a court must consider whether the plaintiff is unable to perform the variety of tasks central to most people's lives, not whether he is unable to perform the tasks associated with his specific job. Id. "The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working." Selenke v. Medical Imaging of Colo., 248 F.3d 1249, 1257 (10th Cir. 2001).

At the time of Plaintiff's deposition on January 26, 2004, Plaintiff was having several diabetes related health problems including end-stage renal failure, diabetic retinopathy for which Plaintiff had undergone laser surgery, memory problems due to low blood sugar, shakiness and loss of consciousness due to low blood sugar, sweats and trembling. Plaintiff controls his diabetes with insulin and watching his diet. He tries to avoid high carbohydrate foods and also has to watch his protein intake. His meals need to be regular in order to prevent his blood sugar from fluctuating. Plaintiff was informed in the early 1990's that he might face the necessity of an organ transplant in his future. Plaintiff is currently looking at possible kidney and pancreatic transplants due to his diabetes.

With regard to the effects of his diabetes on his ability to work, Plaintiff testified at his deposition that he was having trouble controlling his diet at the Quay County Detention Center.

He was having to use more insulin to counteract the stress of his job and the fact that he was not eating right. He was finding that the diabetes affected his job. At times, because of his low blood sugar and his inability to eat on a semi-regular schedule, he had to have others cover his responsibilities so that he could eat something. Plaintiff's diabetes is a progressive disease that has gotten worse over the years. Plaintiff testified that he had more difficulty performing his job with Defendant as his disease progressed. Plaintiff believes one of the incidents for which he received a reprimand may have occurred because of memory problems associated with his diabetes. Plaintiff also believes he might have communicated this possibility to his supervisor when he received the reprimand.

Plaintiff's evidence does not show that he is unable to perform a major life activity that the average person can perform. Plaintiff's evidence also does not show that he is unable or significantly restricted in his ability to perform the variety of tasks central to the major life activity of work. Plaintiff's evidence infers that his diabetes had a notable impact on his ability to perform the specific tasks associated with the particular job he held with Defendant. However, this is insufficient to show that Plaintiff has a substantial limitation in the major life activity of work. In fact, the evidence shows that Plaintiff has been able to perform the tasks associated with jobs he has held subsequent to his termination from Defendant's employ.

Because Plaintiff has failed to show that his impairment substantially limits the major life activity of working, he has failed to show that he is a disabled person within the meaning of the ADA and has thus failed to make a prima facie showing of discrimination based on disability. Defendant is thus entitled to summary judgment on Plaintiff's claim for unlawful discrimination in

Count III and his claim for wrongful termination in Count IV to the extent Count IV is brought pursuant to the ADA.[4]

II.  THE COURT DECLINES TO EXERCISE SUPPLEMENTAL JURISDICTION OVER THE REMAINING STATE LAW CLAIMS

Under 28 U.S.C. § 1367(c)(3), this Court may decline to exercise supplemental jurisdiction over state law claims if it has dismissed all claims over which it has original jurisdiction. This Court's original jurisdiction over Plaintiff's Complaint was predicated on federal question jurisdiction of Plaintiff's claims brought under the ADA. As noted above, the Court will grant judgment to Defendant on Plaintiff's ADA claims leaving only Plaintiff's claims brought pursuant to state law. In accordance with 28 U.S.C. § 1367(c)(3), this Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims and will dismiss these without prejudice. Finally, the Court cautions Plaintiff that any statute of limitations on his state law claims are governed by 28 U.S.C. § 1367(d).

**CONCLUSION**

IT IS THEREFORE ORDERED that Defendant's Motion for Summary Judgment [Docket No. 43] is hereby GRANTED IN PART in that:

1.  Defendant is entitled to judgment on Plaintiff's claim for unlawful discrimination in Count III, and Count III is accordingly DISMISSED WITH PREJUDICE; and

---

[4]Defendant's motion does not address Count IV except as it is brought pursuant to the ADA. Count IV of Plaintiff's Complaint is entitled "Wrongful Termination" and does not indicate that it is brought solely pursuant to the ADA.

2. Defendant is entitled to judgment on Plaintiff's claim for wrongful termination in Count IV to the extent Count IV is brought pursuant to the ADA, and that claim is accordingly DISMISSED WITH PREJUDICE.

IT IS FINALLY ORDERED that the Court declines to exercise supplemental jurisdiction over Plaintiff's remaining state law claims pursuant to 28 U.S.C. § 1367(c)(3) and these claims are accordingly DISMISSED WITHOUT PREJUDICE.

_____
UNITED STATES DISTRICT JUDGE